Institution. Arguments not to exceed 15 minutes per side. Mr. Allen for the appellant, participating by telephone. Thank you, your honor. I think the place to start with this argument is that during the Voyageur process, this juror is admonished to tell the truth. He's told that these questions are to find out whether or not they identify with the state or with the descendant. During the initial phase, he doesn't claim any cognitive or hearing issues. Says that he heard the questions and was confident to be a juror otherwise. During defense counsel's Voyageur of the panel, he asked did anyone have a family member that was a victim of crime, which is a clear question, and he made no response. What comes out later is that this particular jury member's sister was murdered, not only murdered, but by the appellant's cousin. So a blood relative of the person that was on trial. Mr. Stevens, I'm sorry, you're not Mr. Stevens. You're the counsel for Mr. Stevens. Did you ever or did your client put forward any evidence establishing that Matthews, the juror, was the cousin? I mean, is there anything in the record other than sort of hearsay of counsel, somebody told counsel that maybe they were related? Yes, I'm looking in my brief. I'm sitting here in my car. I apologize. In the record, I believe in the return of the writ, page ID 73 talks about how Mr. Fisher is related to Mr. Stevens. But what is that evidence? Is it just that the lawyer was told by some unidentified witness that they might be related? That's kind of what my basic takeaway from the record was. Is there anything other than that? I don't believe so. So if that's true, did you actually present the claim to the state court in a way that would not make that claim, the familial status claim, procedurally defaulted? I believe it was presented to the state court, so there wouldn't be a procedural default. But if all you presented to the state court was this sort of hearsay testimony, is that sufficient to allow the state court to apply the law to the facts? Yes. I would say that there's not only that, but certainly there is the transcript of the sentencing of Mr. Fisher that's part of the state court record that talked about the effect that it had on Mr. Matthews. I would encourage the panel to review the evidentiary hearing that was held with Mr. Matthews testifying in full to see that it's not entitled to any deference, that it's sort of unbelievable and offensive, and that he in fact had a bias against Mr. Stevens and carried that into the jury room. This is Judge Cole. So we have the benefit here of this issue having been remanded back to the same judge in the state trial court, and of course having evidence that was taken, including testimony by Mr. Matthews himself. And Mr. Matthews, the juror, testified that he did not know Mr. Stevens before the trial, had no awareness that there might be any familial relationship between Stevens and I guess this Mr., I think Fisher. That he had sort of moved on from the murder of his sister, and I'm sure that's a difficult thing to do, but that it would not have any impact on his decision as a juror, and he promised to adhere to the jury instructions. So the trial court made factual findings. Those findings are entitled to a presumption of correctness. You've got to rebut them by clear and convincing evidence, and I just have some doubt that there is any evidentiary basis to rebut some of these factual findings that the trial judge made. You're essentially asking us to just assume that he, Mr. Matthews, must have been biased because of this possible familial relationship and the failure to answer the question that was asked at voir dire. His answer about the question was, he said, well, I thought it was a voluntary sort of question that elicited or gave potential jurors a chance to sort of voluntarily respond, and I chose not to. So there was really, I guess I'm just wondering what evidence you have to rebut the factual findings and that would show that Mr. Matthews would not have been entitled to serve on the jury even if he had disclosed that his sister had been killed in a violent crime. It's a long question, I know. And I know, yeah, I'm interested in your response. I think that's a difficult question to answer, and I'm not avoiding the question, but I think it's almost like trying to prove a negative. Certainly, I would hope that either the defense counsel would have used the preemptory or made some inquiry as to cause, but if this person does not reveal that, that makes it very difficult to really have an effective voir dire. I think he's not able to delve into whether or not this juror would identify as the state of Ohio. He's not able to delve into whether or not this has any effect on him. So I think part of it is difficult in that you have to look into the mind of this juror almost. I don't think anybody, unless they're asked that in voir dire and they're honest in their process, is going to say, yes, I'm biased. If you don't answer that initial question, it's hard to have those follow-up questions, and it's hard to answer those and sort of be abstract. I think what we're trying to say is that because he withheld this information, and because of what we've provided in the state court record, and because of what is at stake here, Mr. Stephens is entitled to withdraw. In terms of an affidavit where Mr. Matthews says I was absolutely biased or some smoking gun, we don't have that. I think you have to look at all the different pieces that are part of the state court record, which I hope that I cited correctly in my brief. And piece that together to show that this one juror, because of their actions, did not get into fair trial. And that's a violation of his due process. And in terms of the state court hearings, what I would say about that is to review both of those transcripts, which are part of the record, and make your own determinations. I think it's important to review not only what I cite or what the attorney general cites, but to look at them in whole. As well, the voir dire of Mr. Stephens' trial. And I think that you'll come away with a better understanding of the claim, and I think I would hope that you grant Mr. Stephens relief. If you have no other questions, I will reserve the rest of my time for rebuttal. Okay. Thank you, Mr. Allen. Mr. Chris? Thank you, Your Honor. My name is Scott Chris. I'm here on behalf of the Attorney General of Ohio, representing the warden. And actually, I feel like I'm here on behalf of my colleague, Hilda Rosenberg, who wrote the brief. And my job here is to say as little as possible and not screw that up. Just a few points, though. As far as whether or not he was related, whether or not Fisher and Stephens were related, there's no evidence of that in the record at all. The record site that he uses, which is page ID 73, was the affidavit of Greg Myers, which was submitted with the motion for new trial. Greg Myers was Mr. Stephens' trial counsel. And in that affidavit, he merely says, I believe defendant Stephens is related to Travis Lee Fisher, who was the murderer of Abby Matthews. Asked about that at the evidentiary hearing that was later held, he said, I don't have personal knowledge, but by reporting from members of Stephens' family, that there was apparently some bloodline family link. There was no evidence ever submitted. Timmy Stephens was at the evidentiary hearing. He certainly could have testified to that fact. He could have submitted an affidavit to that fact. Any number of things could have helped establish that as a fact, and it wasn't. So I believe that's a non-issue. The real question was whether or not he was denied due process because Mr. Matthews didn't answer the question. At trial, during voir dire, and I think the answer is clearly no. My counsel opposite gave away the game, I think, when he said, when he invited you to review the transcripts and make your own determination, but of course you know you can't do that. This is a federal habeas case. And apart from that, the first level of deference is to the trial court, even if you were reviewing this as a direct appeal from a federal court, those findings of the trial judge are due great deference. It's a finding of fact that's accorded the presumption of correctness. The same judge presided over the voir dire who presided over the evidentiary hearing in which Mr. Matthews was cross-examined by counsel from both parties. And he determined, as a matter of fact, that Mr. Matthews was an impartial juror and that the four cause challenge would have been denied. And that is due two levels of deference because this is a deep case, and I feel that the court here has no choice but to affirm the district court. So unless you have any questions . . . And we're guided, I guess, pretty much by this McDonough case from the Supreme Court that's got the two prongs. I guess we all acknowledge that Mr. Matthews did not answer the question. The second issue, then, is whether a correct response would have provided a cause for a challenge. Well, I have no doubt that it would have provided . . . Well, a challenge that would be sustained. Correct. And I think Stevens' trial counsel even admits that in his affidavit saying, I would have made a four cause challenge, but if that had not been successful, I might have used a peremptory. So even his trial counsel admits that the four cause challenge wasn't a certain thing because there's no case law that suggests that merely having a relative who was a victim of a violent crime would disqualify you from jury service. Unless you have any other questions. No. Thank you very much. Thank you, Mr. Chris. Mr. Allen, do you have anything further? Yes, just briefly. I would say that the deference is not absolute, obviously. Certainly, you can review whatever is in the record before you. Certainly, in this case, you correctly stated about the two-prong test, and I think we provided enough information not only from the state court record, but as part of our federal habeas to grant him relief and grant him a new trial. Okay. Anything further, Mr. Allen? No, thank you. I trust that your morning in the other court, Muni Court, went forward as scheduled. Did your trial go forward? It did, and I appreciate this court allowing me to present by phone. I appreciate that very much. Okay. Great. Well, thank you for your arguments, and we'll take the case under submission. Again, thank you for presenting it today. I think that completes our argument calendar. It does, Your Honor. You can adjourn court.